HOOD, Judge.
This is a suit for workmen’s compensation benefits instituted by Alvin Washington against L. H. Hurlock and Hurlock Realty Company, Inc. Judgment was rendered by the trial court sustaining an exception of prematurity filed by defendants, and plaintiff has appealed.
Washington was injured on July 28, 1967, while working for defendants. His injuries resulted in the amputation of his right leg, and he has been totally disabled since that time. He received prompt and adequate medical treatment, including confinement and treatment in the Huey P. Long Charity Hospital, in Pineville, from the date of the accident until he was discharged on September 20, 1967.
Defendants commenced payment of weekly compensation benefits immediately after the accident occurred. The first such payment was made to plaintiff on July 29, 1967, that payment being for the sum of $75.00. Thereafter, defendants delivered to plaintiff each week two separate checks, one for $35.00 and the other for $40.00, and they continued to make payments to him in that manner and in those amounts until July 27, 1968. On the last mentioned date, defendants stopped making the payments of $40.00 per week, but they have continued to make the regular payments of $35.00 per week to plaintiff.
Washington, therefore, has received payment of compensation benefits at the maximum rate of $35.00 per week since the date of the accident. In addition thereto, he has received payments of $40.00 per week for a period of 53 weeks, which payments amount to the aggregate sum of $2120.00.
Defendants also rented a wheel chair for plaintiff when he was discharged from the hospital. Later, when the rental company went into bankruptcy and reclaimed the chair, defendants purchased a used wheel chair for $50.00 and furnished it to plaintiff.
Some time after Washington was discharged from the hospital he informed defendant Hurlock that he needed a wooden leg, or prosthesis. Hurlock then asked plaintiff to “stall them about two weeks,” in order to give Hurlock time to sell some property and thus raise sufficient money to pay for the leg. About two or three weeks later Hurlock told plaintiff to go ahead and order the leg and that he would pay for it. Plaintiff thereupon ordered the prosthesis from Byron Findley, an or-thotic, informing the latter that Hurlock would pay for it. Findley telephoned Hur-lock to verify the promise of payment, and he was told by defendant that he would call Findley back in a week or so and would let him know. Hurlock did not call back, and Findley stated that he thereafter made some unsuccessful attempts to contact defendant by telephone. Several weeks are required for the manufacture of an artificial leg after it is ordered. When plaintiff did not receive it as soon as he thought he should, he called an official of the Charity Hospital, and promptly thereafter he was provided with an artificial leg which was paid for completely by a state agency. The cost of such a prosthesis is estimated to be about $400.00.
*354 The evidence shows that plaintiff has never paid any medical expenses in connection with the treatment of his injuries. No one has ever presented him with a bill for medical expenses, other than those which were paid by Hurlock, and he has never asked defendants to pay any such bills other than the requests herein mentioned. The wheel chair was provided promptly by defendants and the prosthesis was provided and paid for by a state agency.
At the trial plaintiff offered in evidence a bill from the Huey P. Long Charity Hospital for $1895.30, representing the charges of the hospital for treating plaintiff. This bill was prepared at the request of plaintiff after the instant suit was filed, and the record shows that prior to that time no demand for payment of that bill had ever been made on either plaintiff or defendants.
Defendants take the position that they have paid plaintiff all of the compensation benefits to which he is entitled, that they have furnished him with proper medical attention, and that plaintiff’s suit thus is premature. In that connection they contend that the separate and additional payments of $40.00 per week which they made to plaintiff, aggregating $2120.00, was for the medical expenses which plaintiff would have to incur, that plaintiff has never used any part of that sum, and thus that they have overpaid his medical expenses.
Plaintiff contends that the two payments amounting to $75.00 which were made to him each week were intended by the parties as payment of “wages in lieu of compensation benefits,” and that no part of said payments can be credited to defendants’ obligation to pay medical expenses. They argue that defendants have refused and failed to pay plaintiff’s hospital expenses at the charity hospital, that they refused to furnish him with an artificial leg, and that the first wheel chair which was furnished by defendants was repossessed because defendant did not timely pay the rent. For these reasons he takes the position that he is entitled to maintain this action against them.
Plaintiff testified that defendants said nothing to him about medical expenses when they began making the payment of $75.00 per week, that Mrs. Hurlock had intimated that each payment was made in two smaller checks simply to make it easier for plaintiff to cash them, and that plaintiff felt that defendants simply were continuing to pay him his full salary of $15.00 per day, five days per week, during at least the first year of his period of disability. Defendant Hurlock and his wife, who kept books for him, testified that the separate checks of $40.00 per week were given to plaintiff for the specific purpose of enabling him to pay his hospital and medical bills as they accrued, and that the payment of medical expenses was made in that manner to avoid the necessity of having to pay one large medical bill after it had accumulated.
The trial judge accepted the testimony of defendant Hurlock, and he concluded that the payments of $40.00 per week made to plaintiff by defendant were for medical expenses. The court said, “The plaintiff is receiving full compensation benefits and he has been paid sums in excess of the medical expenses that he has incurred, even though he apparently has elected not to pay these bills * * * Under the circumstances the court has no alternative but to sustain the exception of prematurity filed by the defendants herein * * * ”
We think the evidence supports that conclusion. The law requires that the employee be “furnished the proper medical attention.” In this case plaintiff not only has been furnished the proper medical attention, but he also has been paid a sum of money in excess of the amount due for all of those medical expenses. We agree with the trial judge that the exception of prematurity must be sustained.
*355 For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.